# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

RUTH MERCEDES MARTINEZ    )
           Plaintiff,          )
                         )
        v.                )      CAUSE NO.: 2:10-CV-370-PRC
                         )
MICHAEL J. ASTRUE, Commissioner of   )
the Social Security Administration,      )
           Defendant.     )

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Ruth Mercedes Martinez on September 22, 2010, and Plaintiff's Memorandum in Support of Her Motion for Summary Judgment [DE 17], filed by Plaintiff on February 15, 2011. Plaintiff requests that the July 17, 2009, decision of the Administrative Law Judge to deny her Supplemental Security Income benefits be reversed or, alternatively, remanded for further proceedings. On May 23, 2011, the Commissioner filed a Memorandum in Support of the Commissioner's Decision, to which the Plaintiff filed a reply brief on June 7, 2011. For the following reasons, the Court grants Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

On August 25, 2006[1], Plaintiff filed an application for Supplemental Security Income, alleging a disability onset date of June 2, 2005. This claim was denied initially on December 28, 2006 and upon reconsideration on April 16, 2007. A hearing was held on June 4, 2009, before Administrative Law Judge ("ALJ") Paul Armstrong, at which Plaintiff, her attorney, and a

---

[1] Plaintiff filed two substantially similar applications on August 18, 2005, and February 14, 2006, which were denied and not appealed.

vocational expert ("VE") appeared. The ALJ issued an opinion denying the application on July 17, 2009. The Appeals Council denied Plaintiff's request for review on August 9, 2010, leaving the ALJ's decision as the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## FACTS

### A.    Background

Plaintiff was 40 years old at the alleged onset of her disability in June 2005. Plaintiff graduated from high school and completed two combined years of college and trade school. Plaintiff formerly worked as a secretary.

### B.    Medical Evidence

Plaintiff's history of seizure disorder began at age 22.    On June 27, 2005, Plaintiff was admitted to the hospital, and during that visit received a CT scan and MRI, showing mild cerebellar atrophy.

On July 26, 2005, Plaintiff saw treating physician Dr. Suresh Reddy, M.D., for a fall suffered after dizziness. On August 23, 2005, at a follow-up visit, her overall condition was unchanged. On August 31, 2005, Plaintiff had an MRI of her cervical spine which showed a moderate size disc herniation at C4-C5 causing mild narrowing of her spinal canal, mild compression of her spinal cord, and mild reversal of normal lordotic curve of her cervical spine.

On January 31, 2006, Plaintiff reported memory lapses and frequent falls. An MRI was

performed on February 2, 2006, that indicated L3-L4 minimal posterior disc bulging with mild facet hypertrophy, L4-L5 mild facet hypertrophy resulting in mild central canal stenosis, and L5-S1 disc protrusion with possible small disc herniation. On February 8, 2006, Plaintiff had an EEG test on report of a seizure. The EEG was abnormal with one sharp wave that was unaccompanied by any clinical phenomenon.

On March 4, 2006, Plaintiff went to the emergency room and was admitted to the hospital for nausea and loss of balance that prevented her from walking without falling. She had Dilantin toxicity, although there had been no change in her dosage and the examining physician did not know why her level was so high. Plaintiff reported having no seizures since approximately June, 2005, but continued to complain of auras and numbness.

In June, 2006, Plaintiff reported an ER visit for seizure-like activity, but was told that it may be related to anxiety or depression, and was told that her Dilantin level was within normal limits.

On December 27, 2006, State Agency medical consultant Dr. Frank Lavallo reviewed the record and concluded that Plaintiff had no exertional limitations, but could not climb ladders, ropes, or scaffolds; could only occasionally balance; and could frequently stoop, kneel, crouch, crawl, and climb stairs. Dr. Lavallo recommended Plaintiff avoid concentrated exposure to noise, vibration, and environmental irritants, and all exposure to hazards such as machinery and heights.

A March 12, 2007, MRI of Plaintiff's spine revealed L5-S1 disk protrusion with possible small disc herniation and minimal bony spurring in the lumbar spine.

On August 28, 2007, Plaintiff was admitted to the hospital for syncope after passing out on the sidewalk in front of her home. While there, she had an MRI, CT scan, and an EEG. The MRI showed diffuse cerebellar atrophy that may be congenital hypoplasia secondary to atrophy related

to anti-epileptic medication or a neurodegenerative disease. A 5 mm round lesion was noted in the fourth ventricle. The EEG was abnormal with low to medium voltage sharp waves and slow wave over the left frontal temporal region suggestive of epileptiform discharge. The CT scan showed rim calcification; differential diagnosis included calcified aneurysm. Clinical examinations revealed normal cerebellar and neurological functions and short and long term memory. An MRI of the cervical spine showed central disk protrusion and moderate canal stenosis causing focal flattening of the spinal cord. There was not signal abnormality nor canal stenosis or narrowing at any other level.

On January 3, 2008, Plaintiff was admitted to the hospital on complaints of dizziness, headache, and convulsions. The final diagnosis was Dilantin toxicity, which was thought to be causing her dizziness.

On February 28, 2009, Plaintiff went to the emergency room reporting partial seizures, but no seizure activity was observed. On April 3, 2009, Plaintiff was admitted to the hospital complaining of headache and nausea and had an elevated level of Dilantin.

On April 30, 2009, Plaintiff's treating physician Dr. Richter noted Plaintiff wearing a hand brace and her report of pain in both hands. Dr. Richter determined that the range of motion in Plaintiff's hands was good. An EMG showed very mild arthritis in both of Plaintiff's hands. Dr. Richter concluded there was no functional disability or functional impairment of Plaintiff's hands.

## C.    Mental Health Evidence

On April 7, 2006, state consulting psychologist Dr. Todd Snyder performed mental status and memory exams. Dr. Snyder determined that Plaintiff's working memory was very poor and her long term memory was below average, but intact. Dr. Snyder concluded that her scores indicated

a significant impairment. He determined that Plaintiff's memory significantly improved when she had cues to aid retrieval, and while self-care and employment would be difficult, they would not be impossible.

On May 6, 2006, Dr. Babar Hussain, M.D., performed a psychiatric evaluation. She diagnosed Plaintiff with major depression without psychotic features. Plaintiff received psychotherapy treatment and Celexa medication. On June 5, 2006, Dr. Hussain saw her for a follow-up appointment and concluded that Plaintiff was compliant with the medication.

On November 28, 2006, a State Agency consulting psychologist reviewed the record and concluded that Plaintiff had moderate difficulties in maintaining concentration, persistence, or pace. Dr. Kladder opined that Plaintiff's Memory Index score of 74 indicated a severe mental impairment. He concluded that Plaintiff was able to complete simple, repetitive tasks despite the impairment.

### D.      Plaintiff's Testimony

At the Administrative Hearing, Plaintiff was wearing a brace and testified that pain in her hands interferes with activities such as typing, writing, laundry, and cooking. She stated that she takes 800 mg Ibuprofen at least 3 times per day for this pain. She also testified that she frequently falls suddenly which requires her to sit for a period of time to compose herself. Plaintiff indicated that she frequently has memory loss. Plaintiff testified that she went to a psychologist in 2006 and did not follow up with the recommended treatment for depression and conversion disorder because the psychologist left and the facility had no one else for her to see. She also described partial seizures which make her very fatigued. Plaintiff indicated that while she has these symptoms and fears leaving the house, she does not have trouble caring for her son.

## E.    Vocational Expert Testimony

At the Administrative Hearing, the ALJ described a hypothetical individual of Plaintiff's work experience who was limited to light exertional duties, frequent fine finger manipulation bilaterally, and simple, unskilled work.  The hypothetical individual was further limited to jobs that did not involve unprotected heights, dangerous moving machinery, open plains, bodies of water, or commercial driving.  Edward Steffan, the vocational expert ("VE"), testified that such a hypothetical individual was capable of performing an excess of 5,000 jobs as a security monitor, an excess of 1,000 jobs as a greeter, and an excess of 5,000 customer service positions.  The VE subsequently testified that an individual who was limited further to occasional fine finger manipulation would have the same possibilities, except only 2,500 of the customer service positions would be possible.  However, if that person were limited to sedentary work they would be precluded from employment.  Also, the VE testified that if the hypothetical individual required time off work for recovery more than two times per month consistently, or work lapsed 20% of the day this would preclude employment.  The VE also noted that individuals with conditions that disturb the work of others would quickly be terminated.

## F.    The ALJ's Decision

The ALJ found that Plaintiff had the following sever impairments: seizure disorder, degenerative disc disease in the neck and back, and depression.  The ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work except that she has postural limitations that precluded her from climbing ropes, ladders, and scaffolds or from working at

unprotected heights, or around dangerous moving machinery, open flames, and bodies of water. Further, the ALJ found Plaintiff able to perform simple, unskilled work that requires frequent bilateral fine finger manipulation, but she should avoid work requiring commercial driving.

In determining Plaintiff's RFC, the ALJ found persuasive the opinions of Dr. Lavallo, Dr. Kladder, and Dr. Snyder. While the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, he found Ms. Martinez's statements concerning the intensity, persistence, and limiting effects to be not credible to the extent that they were inconsistent with the RFC assessment. Based on the VE's testimony, the ALJ concluded that Plaintiff could not perform past work as a secretary, which the VE stated was "sedentary with an SVP 5, semi-skilled." Instead, the ALJ found Ms. Martinez capable of performing "simple, unskilled, sedentary occupations" including: security monitor, greeter, and customer service representative.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the

evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ's findings are supported by substantial evidence and under the correct legal standard. *See Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). If an error of law is committed by the Commissioner, then the "court must reverse the decision regardless of the volume of evidence supporting the factual findings." *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

An ALJ must articulate, at a minimum, his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). The ALJ must build an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004) (quoting *Scott*, 297 F.3d at 595); *see also Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999) (citing *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are:

(1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to Step 2;

(2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to Step 3;

(3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to Step 4;

(4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not

disabled, and the claim is denied; if no, then the inquiry proceeds to Step 5;

(5) Can the claimant perform other work given the claimant's residual functional capacity, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At the fourth and fifth steps, the ALJ must consider an assessment of the claimant's residual functional capacity ("RFC"). "The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young*, 362 F.3d at 1000. The ALJ must assess the RFC based on all the relevant evidence of record. *Id*. at 1001 (citing 20 C.F.R. § 404.1545(a)(1)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Id*. at 1000; *see also Zurawski*, 245 F.3d at 886; *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff argues that the ALJ committed reversible error by: (1) making improper medical determinations and mischaracterizing evidence about Plaintiff's seizure disorder and degenerative disc disease; (2) improperly using boilerplate language in Plaintiff's credibility determination and failing to consider the reasons for Plaintiff's missed appointments; (3) failing to include in his RFC limitations that reflected Plaintiff's deficiencies in concentration, persistence, or pace; and (4) failing to properly question the VE. The Commissioner contends that the ALJ's findings are supported by substantial evidence and that the ALJ complied with the relevant legal requirements.

### A.     Independent Medical Determinations

Plaintiff argues that the ALJ made independent medical determinations, not supported by the

evidence, with regard to Plaintiff's seizure disorder and degenerative disc disease. The Commissioner replies that these determinations are supported by medical evidence.

The Seventh Circuit has repeatedly held that ALJs are not to make their own independent medical findings. *See, e.g., Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009); *Blakes v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). Judges have been warned not to "succumb to the temptation to play doctor" because "lay intuitions about medical phenomena are often wrong." *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) (citing cases).

Plaintiff argues that the ALJ impermissibly attributed Plaintiff's seizure-like symptoms to elevated Dilantin and concluded that Plaintiff can manager her symptoms by properly taking her medication. The ALJ relied on notes from Plaintiff's hospitalizations for anticipated seizure or seizure-like symptoms where no seizure activity was found. Plaintiff was hospitalized in March 2006, January 2008, and April 2009 for complaints of seizure activity, but her symptoms were attributed to causes other than seizures, including Dilantin toxicity or depression. In the two instances where Plaintiff was suffering from Dilantin toxicity, her symptoms dissipated when her Dilantin levels were stabilized. From these two instances, the ALJ concluded that Plaintiff's seizure symptoms were connected to her use of seizure medication, not to her seizure disorder.

Plaintiff argues that the medical evidence does not support the ALJ's conclusion that Plaintiff can manage her symptoms through proper use of medication. Instead, Plaintiff argues, the records indicate that there was no change in the dosage of Plaintiff's medication prior to her March 2006 hospitalization and that notes from June 2006 indicate that she went to the emergency room for seizure-like activity despite normal levels of Dilantin. The Commissioner argues that Plaintiff has

failed to provide medical evidence to support her conclusion that her seizure symptoms are disabling or that her seizure-like symptoms could not be controlled by proper medication, arguing that medical staff believed her hospitalization was the result of depression due to the denial of Plaintiff's disability application, not because she was having disabling seizure-like activity. Furthermore, the Commissioner argues, the ALJ did not completely reject all of Plaintiff's seizure symptoms, but included limitations in the RFC from seizure disorder.

Despite the Commissioner's argument, the ALJ did not obtain or cite any medical evidence that Plaintiff's seizure symptoms could be easily controlled. His conclusion that all of her seizure symptoms are due to improperly taking medication is an impermissible medical determination.

Plaintiff also argues that the ALJ mischaracterized evidence regarding Plaintiff's seizure disorder. The Commissioner argues that the ALJ need not discuss every piece of evidence and that the test results Plaintiff points to are not inconsistent with the ALJ's conclusions. The ALJ concluded that Plaintiff suffered from seizure disorder, a severe impairment under the regulations, but that it was not disabling. He based this conclusion on a finding that Plaintiff's medical records did not substantiate her claim to have suffered partial seizures or symptoms that were not caused by her medication.

Although the ALJ need not discuss all evidence, he must consider all the evidence that is relevant to making a determination of disability and give enough information to allow for meaningful review. *Clifford*, 227 F.3d at 870; *Young*, 362 F.3d at 1002; SSR 96-8p, 1996 WL 374184 (Jul. 2, 1996). An ALJ is not required to address every piece of testimony and evidence; "[h]owever, an ALJ may not select and discuss only that evidence which favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the

reviewing court to trace the path of his reasoning." *Gilkey v. Barnhart*, 417 F. Supp. 2d 949, 963 (N.D. Ill. 2006).

In particular, Plaintiff argues that the ALJ did not discuss all of the results from an August 2007 MRI and EEG, including evidence of diffuse cerebellar atrophy, a round lesion, and abnormal EEG readings suggesting epilieptiform discharge, or the results from other tests that demonstrated seizure activity. Although he did not discuss every medical test in the record, the ALJ discussed a number of tests and emphasized that his finding was consistent with the functional finding of the doctors at the time: that Plaintiff had no deficits in motor, sensory, or cerebellar functioning. The ALJ's selective discussion of test evidence was not impermissible. He gave enough information about his conclusion that Plaintiff's seizure disorder did not disable her from performing work-related function to allow the Court to trace his reasoning.

Plaintiff also argues the ALJ made an improper medical determination by concluding that Plaintiff had not received the type of medical treatment one would expect for an individual suffering from disabling degenerative disc disease. The Commissioner contends that the ALJ properly relied on medical opinions to reach his conclusions.

The ALJ may "consider conservative treatment in assessing the severity of a condition," but should cite medical evidence about what kind of treatment would be appropriate. *Brown v. Barnhart*, 298 F. Supp. 2d 773, 797 (E.D. Wis. 2004) (citing *Dominguese v. Massanari*, 172 F. Supp. 2d 1087, 1096 (E.D. Wis. 2001)).

In this case, the ALJ concluded that Plaintiff was not receiving the type of treatment expected from an individual with disabling disc disease by only taking ibuprofen for pain, failing to attend recommended physical therapy, and not being recommended for surgery by physicians.

The ALJ did not cite medical evidence in support of his assumption that more aggressive treatment, such as surgery or stronger pain medication, would be appropriate for Plaintiff's back pain. The ALJ also noted that there was no evidence that Plaintiff attended physical therapy as recommended, but did not question Plaintiff about whether she attended physical therapy or, if she did not, her reasons for not pursuing it. SSR 96-7 provides that an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7p, 1996 WL 374186, *7 (Jul. 2, 1996). In this case, the ALJ impermissibly relied on his own medical determination of appropriate treatment to conclude that Plaintiff was not suffering from degenerative disc disease.

In addition to making improper medical determinations about what Plaintiff should have done to treat her back pain, Plaintiff also argues that the ALJ mischaracterized and ignored evidence about Plaintiff's degenerative disc disease. The Commissioner contends that no material evidence was mischaracterized or ignored.

In this case, the ALJ cited multiple medical tests demonstrating that Plaintiff's degenerative disc disease was not as severe as she reported, along with evidence from physical tests indicating that Plaintiff had full muscle strength in her extremities, lack of numbness, and normal reflexes. However, the ALJ failed to mention other MRIs that indicated disc herniation and moderate canal stenosis. Although the ALJ need not describe every medical test, as described above, he "may not select and discuss only that evidence which favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the reviewing court to trace the path of

his reasoning." *Gilkey*, 417 F. Supp. 2d at 963 (citing *Diaz*, 55 F.3d at 307). The Court is also concerned that the ALJ relied on what he identified as an MRI from 2005 that was, in fact, an x-ray, further indicating less than complete attention to the medical record. The ALJ has not allowed the Court to trace his reasoning behind discounting several tests that demonstrated degenerative disc disease.

The ALJ's mischaracterization and ignoring of evidence, as well as his drawing impermissible medical conclusions, are errors requiring remand. These errors affect every part of the ALJ's decision, including the credibility finding and the RFC.

**B.    Credibility Finding**

Plaintiff argues the ALJ's credibility determination was improper because the ALJ used boilerplate language and failed to account for Plaintiff's reasons for missing appointments. The Commissioner disagrees, contending that the ALJ relied upon medical opinions and substantial evidence.

Social Security Regulations provide that, in making a disability determination, the Commissioner will consider a claimant's statement about his or her symptoms, including pain, and how they affect the claimant's daily life and ability to work. *See* 20 C.F.R. § 404.1529(a). However, subjective allegations of disabling symptoms alone cannot support a finding of disability. *See id*. The Regulations establish a two-part test for determining whether complaints of pain contribute to a finding of disability: (1) the claimant must provide objective medical evidence of a medically determinable impairment or combination of impairments that reasonably could be expected to produce the symptoms alleged; and (2) once an ALJ has found an impairment that reasonably could cause the symptoms alleged, the ALJ must consider the intensity and persistence

of these symptoms.  20 C.F.R. § 404.1529(a).

The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1)     The individual's daily activities;
(2)     Location, duration, frequency, and intensity of pain or other symptoms;
(3)     Precipitating and aggravating factors;
(4)     Type, dosage, effectiveness, and side effects of any medication;
(5)     Treatment, other than medication, for relief of pain or other symptoms;
(6)     Other measures taken to relieve pain or other symptoms;
(7)     Other factors concerning functional limitations due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).  In making a credibility determination, Social Security Ruling 96-7p states that the ALJ must consider the record as a whole, including objective medical evidence, the claimant's statement about symptoms, any statements or other information provided by treating or examining physicians and other persons about the conditions and how they affect the claimant, and any other relevant evidence.  *See* SSR 96-7p.

An ALJ is not required to give full credit to every statement of pain made by the claimant or to find a disability each time a claimant states he or she is unable to work.  *See Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996).  However, Ruling 96-7p provides that a claimant's statements regarding symptoms or the effect of symptoms on her ability to work "may not be disregarded solely because they are not substantiated by objective evidence."  SSR 96-7p at *6.  An ALJ's credibility determination is entitled to substantial deference by a reviewing court and will not be overturned unless the claimant can show that the finding is "patently wrong."  *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006).

Plaintiff first argues that the ALJ's decision was improper because it used boilerplate language in determining Plaintiff's credibility.  Plaintiff cites the ALJ's language "the claimant's

statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." If the sentence cited by Plaintiff encompassed the totality of the credibility finding in the ALJ's decision, it would indeed be improper. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010). The Commissioner argues that the ALJ explained his credibility finding by describing how persuasive he found each of the physicians and consultants, describing the objective tests and their correlation to Plaintiff's complaints, and describing Plaintiff's daily activities. Plaintiff argues that the ALJ summarized this evidence in support of his RFC finding, not separately in support of the credibility finding, such that it is impossible to tell whether the ALJ impermissibly made the RFC determination first. Such a "post-hoc statement turns the credibility determination process on its head . . . rather than evaluating the [Plaintiff's] credibility as an initial matter in order to come to a decision on the merits." *Brindisi v. Barnhart*, 315 F.3d 783, 788 (7th Cir. 2003). The Court shares Plaintiff's concern that the ALJ did not make a separate, initial credibility finding but merely intertwined his credibility analysis with his RFC. On remand, the ALJ is directed to fully and separately explain his credibility analysis.

C.      **Residual Functional Capacity Assessment**

The ALJ determined Plaintiff has the residual functional capacity to perform light work, but cannot climb ropes, ladders, and scaffolds, or work around dangerous machinery, flames, or bodies of water. Plaintiff argues that the RFC assessment was improper because the ALJ failed to account for limitations in concentration, persistence, and pace; mischaracterized evidence; and failed to discuss all limitations in reaching the RFC. The Commissioner responds that there is substantial evidence to support the ALJ's conclusion.

The RFC is a measure of what an individual can do despite the limitations imposed by her impairments. 20 C.F.R. § 404.1545(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. § 404.1527(e)(2); *Diaz*, 55 F.3d at 306 n.2. The RFC is an issue at Steps Four and Five of the sequential evaluation process. SSR 96-8p. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id*. at *3. The ALJ's RFC finding must be supported by substantial evidence. *Clifford*, 227 F.3d at 870. In arriving at a RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." SSR 96-8p at *5. In addition, he "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'" because they "may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim." *Id*. The ALJ must build an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott*, 297 F.3d at 595 (quotations omitted).

Plaintiff argues the ALJ failed to account for limitations in concentration, persistence, or pace in the mental RFC determination. In arriving at the Plaintiff's mental RFC, the ALJ must assess the Plaintiff's degree of functional limitation in four functional areas: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(C)(3); *see also Steininger v. Astrue*, No. 1:07-CV-00278, 2008 WL 4539001, at *5-7 (N.D. Ind. Oct. 7, 2008).

Plaintiff contends that an RFC limited to simple, unskilled work does not adequately account

for the moderate difficulties in concentration, persistence, or pace found at Step 3 of the sequential evaluation process.  The Commissioner asserts that the ALJ relied upon uncontradicted medical opinions to determine this RFC.  The Seventh Circuit has held that individuals with moderate deficiencies in concentration, persistence, or pace "are able to perform simple and repetitive light work."  *Simila v. Astrue*, 573 F.3d 503, 521-22 (7th Cir. 2009) (citations and quotations omitted). Furthermore, the ALJ in this case also relied upon the opinion of reviewing psychologist Dr. Kladder who concluded that Plaintiff was able to complete simple, repetitive tasks.  Accordingly, the ALJ's mental RFC determination will not be disturbed.

Plaintiff also argues that the ALJ failed to discuss all of the limitations related to Plaintiff's seizure disorder, including falling and auras.  Plaintiff emphasizes that these are not symptoms linked to elevated levels of Dilantin, but are symptoms consistent with the ALJ's finding that Plaintiff suffers from seizure disorder.  "In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p at *5.  Although, as described above, the Court concluded that the ALJ did not err in his conclusion that Plaintiff's seizure disorder does not entirely prevent her from working, on remand, the ALJ is directed to consider how all of Plaintiff's symptoms are accounted for in the RFC.

Finally, Plaintiff argues the ALJ failed to include limitations for Plaintiff's hand pain in the RFC. The Commissioner asserts that the ALJ relied on uncontradicted medical evidence in determining there was no functional evidence of hand pain. The ALJ assessed Plaintiff's hand pain in steps 2 and 3 of his analysis.  In assessing the hand pain, the ALJ relied upon the record of Plaintiff's treating physician Dr. Richter, who determined that Plaintiff's arthritis was "very mild" and that she had good range of motion in her hands and no disability or functional impairment.

From this opinion, the ALJ limited Plaintiff to frequent fine finger manipulation. Plaintiff argues that the ALJ did not discuss how he determined the limitation in the RFC or how he considered the medical evidence and Plaintiff's testimony about her hands. However, as the Commissioner argues, the ALJ reasonably relied on Dr. Richter's conclusion that there was no disability or functional impairment of Plaintiff's hands, and that limitation is reflected in the RFC.

Plaintiff's arguments regarding the ALJ's mischaracterization of evidence and impermissible medical determinations are discussed above. On remand, the ALJ is directed to fully consider all medical evidence in the record, consulting with a medical expert as necessary to explain the results of the tests and the medical conclusions that can be drawn from them, address all of Plaintiff's symptoms in the RFC, and to provide enough information for the Court to evaluate his reasoning.

### D. Vocational Expert Testimony

Plaintiff argues the ALJ erred in relying on the VE's testimony to determine that there were jobs in the national economy that Plaintiff could perform. Plaintiff claims the hypothetical given to the VE was not sufficient, the ALJ failed to ask whether the VE's opinion was consistent with the DOT, and the VE's testimony was unreliable.

When an ALJ relies on testimony from a VE to make a disability determination, the ALJ must incorporate all of the claimant's limitations supported by medical evidence in the record. *See Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *see also Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003) ("Furthermore, to the extent the ALJ relies on testimony from a vocational expert, the question posed to the expert must incorporate all relevant limitations from which the claimant suffers.") (citation omitted). If the VE is unaware of all of the Plaintiff's limitations, he may refer to jobs the Plaintiff cannot perform. *Kasarsky*, 335 F.3d at 543.

Because the case is being remanded for other reasons described above, new VE testimony will need to be obtained based on appropriate disability and RFC findings. The ALJ is cautioned that he must incorporate all relevant limitations in his questioning of the VE.

**E.      Remedy**

Finally, Plaintiff requests that the Court reverse the Commissioner's decision and remand for an award of benefits. An award of benefits is appropriate "only if all factual issues have been resolved and the record supports a finding of disability." *Briscoe*, 425 F.3d at 356. Here, the ALJ's opinion was not supported by substantial evidence because he failed to develop the record, leaving several issues unresolved. Further, although Plaintiff requests an award of benefits, she fails to present a developed argument in favor of doing so.

The ALJ must address the Plaintiff's credibility and her physical impairments, including obtaining the services of a medical expert, if necessary, and amend the hypothetical to the VE accordingly. These are issues that can only be resolved through further proceedings on remand. Accordingly, this matter is remanded for further proceedings.

## CONCLUSION

Therefore, to this extent the Court **GRANTS** the Plaintiff's Memorandum in Support of her Motion for Summary Judgment [DE 17] and **REMANDS** this matter for further proceedings consistent with this opinion: the ALJ shsll review the evidence of record *de novo*, including any new evidence submitted into the record; hold a new hearing; and issue a new decision.

SO ORDERED this 11th day of October, 2011.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:     All counsel of record